**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |  |
|---|---|---|
| WANNA PLAY PRODUCTS INC. DBA AMAZON STOREFRONT CALMEROOS | ) ) ) ) ) | Civil Action No. 8:20-cv-00443 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | JURY TRIAL DEMANDED |
| ROBERT EMERY, JASON BAKKE, SNUGGLE PET PRODUCTS, LLC DBA SmartPetLove, and DOE 1 | ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT**

Plaintiff Wanna Play Products Inc. doing business as Amazon Storefront Calmeroos ('Plaintiff' or 'Calmeroos'), and for its Complaint against Defendants Robert Emery ('Defendant Emery'), Jason Bakke ('Defendant Bakke'), Snuggle Pet Products, LLC doing business as SmartPetLove ('SmartPetLove'), and DOE 1 ('Defendant DOE 1')(collectively, 'Defendants') alleges as follows:

1

### I.   NATURE OF THE ACTION

1. Plaintiff seeks judicial assistance because Defendants have 1) eliminated Plaintiff's highest grossing product through fraudulent complaints; 2) trashed Plaintiff's listing and seller reviews with untrue statements, and 3) ignored Plaintiff's resolution efforts.  Defendants' latest malicious tactics evidences their calculated willingness to hurt and eliminate honest competitors, such as Plaintiff Calmeroos.

2. Defendants compete directly with Calmeroos by selling pet-comforting products on Amazon.com (in the United States) and Amazon.ca (in Canada).

### A. Without Ownership Rights, Defendants Asserted Unenforceable Patents in Their Infringement Claims Against Plaintiff.

3. Concerning the first issue, and upon information and belief, Defendants fired off multiple fraudulent Amazon Patent Infringement Reports ('Amazon Complaints') claiming that Calmeroos infringes unenforceable, expired, and irrelevant US patents that they do not own.

4. Worse, thereafter, Defendants' bald patent assertions omitted key information, rendering Calmeroos helpless.

5. Fully knowing the effects of their disruption, Defendants are content

in locking their competition in e-commerce limbo.

**B. Defendants Filed Anticompetitive and Unwarranted Negative Reviews Against Plaintiff.**

6. Turning to the second issue, upon information and belief, Defendants have filed unfair one-star reviews on Amazon causing would be customers to reject Calmeroos' offerings.  Defendants attacked both Calmeroos as an Amazon seller and its accused puppy.

**C. Defendants Received an Injunction Preventing Calmeroos' Sales by Submitting False Claims of Patent Infringement, Entering Inappropriate Negative Reviews, and Filing False Inauthentic Claims.**

7. Finally, despite Calmeroos' and its counsel's pre-suit resolution efforts, which evidences Defendants' meddling, they refuse to withdraw the fraudulent complaints or anticompetitive reviews.  As explained more fully below, Defendants' fire and forget complaint tactics have devastated Plaintiff Calmeroos and inflicted irreparable damages.

8. Defendants' actions have resulted in Plaintiff's suspended listings, lost sales, potential account cancelations, frozen funds, and stranded assets on Amazon.com.

9. This is a cause of action to remedy Defendants' anti-competitive, tortious, and fraudulent behavior against Calmeroos on the Amazon.com

selling platform.

**D. Defendants Forced Calmeroos to Seek Judicial Intervention.**

10.     Because of Defendants' abovementioned atrocities, Plaintiff's causes of action include declaratory relief that it does not infringe invalid and unenforceable asserted patents not owned by any Defendant. Similarly, Plaintiff seeks declaratory relief that its registered patent is invalid because of endless prior art references, and if the patent remains valid, that Plaintiff is not liable for infringement.

11.     Plaintiff also seeks declaratory relief that Defendants' purported heart trade dress and snuggle puppy trademark are invalid. Again, regardless of validity, Plaintiff seeks judgment that it is not liable for infringement of either.

12.     Additionally, Defendants abhorrent behavior results in liability for violations of tortious interference with contractual and business relations; defamation; Florida Deceptive and Unfair Trade Practices Act; and other related causes of action.

13.     By filing Amazon Complaints and ignoring any resolution efforts, Defendants successfully shuttered an entire business without presenting any evidence, providing any details (such as a relevant patent

4

number Calmeroos' allegedly infringed), or expending more than five minutes to do so.

14.     Despite incrementally escalating Calmeroos' resolution efforts, Defendants' many failures have forced Calmeroos to turn to judicial intervention.

## II.   PRIOR US DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA

15.     Plaintiff previously filed a lawsuit against Defendants in the US District Court for the Northern District of Georgia, which is captioned *Plaintiff Wanna Play Products Inc. doing business as Amazon Storefront Calmeroos v. Defendants Robert Emery, Snuggle Pet Products, LLC doing business as SmartPetLove, and DOE 1*, Civil Action No. 1:20-cv--00010-AT (NDGa 2020)('Georgia Lawsuit').

16.     Defendants' counsel intimated that it would file a Motion to Dismiss or Transfer as counsel alleges that Defendants lack Constitutional ties to Georgia.

17.     Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), Plaintiff dismissed voluntarily all claims against Defendants **without prejudice** on February 10, 2020.

18.     During the Georgia Lawsuit, when presented with evidence

that the bases for Defendants' Amazon Complaints were wholly irrelevant to Calmeroos' products, decidedly unenforceable, and conspicuously never owned by Defendants, counsel for Defendants explained that the asserted patent number was a Taiwanese patent registration asserted against Calmeroos' Amazon US account.

### A. Amazon.com in the US is different from Amazon.ca in Canada.

19.     Defendants' counsel asserted that Defendants held an erroneous belief that they could assert a Taiwanese patent registration against Calmeroos' Amazon.com (United States listing) because Amazon.com is worldwide.  But, even if Defendants owned an enforceable Taiwanese patent registration, they surely know that Amazon marketplaces are divided geographically.  For example, Defendants sell their Snuggle Puppy through the Amazon Canada Marketplace. https://www.amazon.ca/Snuggle-Pet-Products-Brown-SnugglePuppie/dp/B000NVDDXM/ref=sr_1_1?keywords=smartpetlove&qid=1581476505&sr=8-1 (last visited Feb. 11, 2019).

20.     As evidenced from Amazon.ca's website (vice Amazon.com), and the fact that all prices are in Canadian dollars, Defendants' allegation that it was unaware the Amazon.com marketplace was not global seems

disingenuous.

    a.  Products to be sold on Amazon.com in the US are shipped to Amazon FBA Warehouses throughout the US.

    b.  Products to be sold on Amazon.ca in Canada are shipped to Amazon warehouses throughout Canada.

    c.  Sales through Amazon.com in the US and Amazon.ca in Canada are completely separate.

        i.  Proceeds from Canadian sales are paid to a seller's Canadian-based CND account in Canadian dollars.

        ii.  Proceeds from US sales are paid to a seller's US-based USD account in US dollars.

    d.  Taxes related to Amazon sales are entirely different in Canada versus the US.

        i.  In Canada, sellers collect and remit Goods and Services and Provincial taxes.

        ii.  In the US, sellers must collect and remit state sales tax according to where products are warehoused and sold.

        iii.  To sell in either market, a seller must be aware of these significant tax differences.

e.  Product listings, even if for the exact same product, are completely distinct in the .ca marketplace versus .com marketplace.  For instance, product listings have different ASINS and are treated as completely independent listings from each market.

Declaration of Ms. Crystal McPherson ('McPherson Decl.') ¶ 3, Exhibit 1.

21.     Further, Amazon sellers in the US are or should be aware of Amazon's patent policy stated below.[1]

**What is a patent?**

A patent is a form of legal protection for inventions. An issued patent grants its owner the right to exclude others from making, using, offering to sell, selling, or importing the invention into the <u>United States</u> for a fixed number of years.

*See generally*, Exhibit 17 (Amazon Intellectual Property Policy for Sellers) (emphasis added).

### B. Taiwanese Patents are not Enforceable in the US or Canada.

22.     Putting aside the fact that Taiwanese patent registrations may not be asserted against sales within the United States, a cursory search of

---

[1] https://sellercentral.amazon.com/gp/help/help.html?itemID= Q53DXVX2D2TPCPQ&language=en_US&ref=ag_Q53DXVX2D2TPCPQ_c ont_201361070 (last visited Feb. 11, 2019), Attachment X.

Defendants' purported Taiwanese patent number, 544552, related to a lock device control system, was invented by Yi-Ting TW Shen, and was applied for by I-Tek Metal Manufacturing Co., Ltd.TW. *See* Exhibit 12 (Taiwan Patent Search – 544552).

### C. SmartPetLove's Actual Patent is Invalid and Calmeroos' Products do not Infringe.

23.    Next, Defendants' counsel explained that Calmeroos, by selling its accused puppy, was liable for infringing US Patent Registration No. 10,314,292 ("292 Patent'). Exhibit 13 (US010314292). While Defendant SmartPetLove purportedly owns this patent by assignment, the '292 Patent fails to disclose countless prior art references. Further, when counsel asked whether the puppy's plush produces a breathing sound, a claimed limitation, it became apparent that even if Defendants filed a valid, enforceable patent that it owned, Calmeroos' puppy would not infringe as it does not breathe.

### D. Alleged Copyright Infringement,

24.    Undeterred, Defendants' counsel identified a previously unasserted copyright registration that Calmeroos purportedly infringed. However, despite requesting and in keeping with Defendants' tactics, counsel has not provided an exemplar of the underlying work to

determine whether their latest allegations held merit.

### E.  A Heart-Shaped, Red Heart is Functional and not Distinctive; Therefore it is not Protectable as Trade Dress.

25.    Grasping at straws, Defendants next asserted that Calmeroos'

puppy infringes their heart trade dress –

the same heart that is the subject of its

patent registration.  Plainly, Defendant

SmartPetLove's heart is heart-shaped, red

in color, and features a conspicuous

power button that uses a universally-



known symbol for a power switch.  After all, the power button does just

that – it functions as a switch to power on its modular simulator . . . the

same one that is the subject of the '292 Patent.

26.    Calmeroos explained that Defendants' heart is a common

shape and color that lacks the requisite distinctiveness to afford

protectable trade dress.  Even the power button's symbol is not unique or

distinctive to SmartPetLove.

27.    Moreover, Defendants' heart is clearly functional, and it even

serves as a claimed limitation within the '292 Patent.  And, well-settled law

in the United States precludes trade dress protection for items that are

10

functional.

28.     Still undeterred, Defendants' counsel morphed its heart trade dress assertion into its entire dog toy.

**F. Self-Serving Email.**

29.     Now, most recently, Defendants have advanced a recent email string complaint purportedly demonstrating actual confusion between Calmeroos' product and Defendants'.  The contemporaneous timing of this complaint and pointed, legal language within supports that the *evidence* was manufactured.  Indeed, should the email string actually prove legitimate, Plaintiff's Calmeroos listing was suspended for much of the time where a seemingly upset customer could actually confuse Plaintiff's product with Defendants'.

30.     Like many aspects, Plaintiff believes that Defendants' actions do not support a finding that they were simply enforcing their intellectual property.  Rather, Defendants have employed abusive and oppressive tactics that defy US law to simply and unlawfully destroy a competitor.

31.     Defendants' constant moving targets mean that Calmeroos may not present an all-inclusive defense.  Indeed, a few weeks ago, Defendants filed additional trademark applications.  *See* Exhibit 14 -

(2020.2.17 - Snuggle Pet's Trademark Record List Display).

32.     Like its newly-filed Snuggle Puppy trademark application, Calmeroos has a good faith belief that Defendants will conjure additional, never before asserted claims when they respond.

## III.   JURISDICTION AND VENUE

33.     Calmeroos' patent invalidity and non-infringement claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. §§ 1338(a), 1367, and 2201.

34.     This Court may exercise personal jurisdiction over Defendant Emery because he resides within this jurisdiction.

35.     Further, this Court may exercise personal jurisdiction over SmartPetLove because it has transacted and continue to transact business in this judicial district and division.

36.     Further still, this Court has personal jurisdiction over Defendants Emery, Bakke, and DOE 1 because they have knowingly and actively engaged in tortious acts in this District.  For example, and upon information and belief, Defendants Emery, Bakke, and DOE 1 has

conspired with each other to carry out tortious acts in this District.

37.     This Court has supplemental jurisdiction over Plaintiff's Florida state-law claims pursuant to 28 U.S.C. § 1367, in that the state law claims are integrally-related to the federal claims and arise from a common nucleus of operative facts, such that the resolution of all claims herein is in the interests of judicial economy.

38.     The Court has personal jurisdiction over Defendants pursuant to Florida's Long Arm Statute because Defendants have committed tortious acts within the state from which the below causes of action arise, and/or have committed tortious actions outside of Florida with the intent to cause—and in fact caused—injury in Florida and to Florida, as explained in more detail below.

39.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391, 28 U.S.C. § 1400(b).

## IV.    PARTIES

### A. Plaintiff Wanna Play Products Inc.

40.     Plaintiff Wanna Play Products Inc. is a Canadian corporation located at 12 McKall Bay, Winnipeg, Manitoba R3X 1T8.  Plaintiff does business as Amazon Seller Calmeroos.  Ms. Crystal McPherson owns and

operates Wanna Play Products Inc. with her husband.  McPherson Decl.¶ 4, Exhibit 1.

41.     Plaintiff owns US Trademark Registration No. 5,968,918 (Calmeroos) to protect "Plush toys; Plush toys for dogs which provide both warmth and simulated heartbeat sensations."

### B.  Defendant Robert Emery.

42.     Upon information and belief, Robert Emery is the member-manager of Snuggle Pet Products LLC.  Upon further information and belief, he resides at 796 Marbury Lane, Longboat Key, Florida 34228.

### C.  Defendant Jason Bakke.

43.     Upon information and belief, Jason Bakke is a member of Snuggle Pet Products LLC.  Upon further information and belief, he resides at 2360 NE 13th Way, Hillsboro, Oregon 97124.

### D.  Defendant Snuggle Pet Products LLC.

44.     Upon information and belief, Snuggle Pet Products LLC has a principal place of business at 41180 Vincenti Court, Novi, Michigan 48375. Defendant Emery serves as its registered agent.  Upon further information and belief, Snuggle Pet Products LLC operates an Amazon.com account named SmartPetLove.

### E.  Defendant DOE 1.

45.      Upon information and belief, Defendant DOE 1, identified as 'Real Puppy Lover,' submitted false Amazon product and seller reviews. Upon further information and belief, Defendant DOE 1 is either Defendant Emery, his family member, or his friend.

46.      Upon information and belief, Defendant DOE 1 is either the same Defendant, person, entity, or are working in concert with each other.

47.      Upon information and belief, Defendant DOE 1 is a person or business entity of unknown makeup or anonymous individual(s) who conduct business throughout the world, including within this judicial district through the operation of Amazon.com storefront(s), Amazon Reviews, Amazon.com buyer account(s), or e-mail address(es).

48.      Upon information and belief, Defendant DOE 1 purchased goods with the intent to cause harm and damage Plaintiff. Upon further information and belief, Defendant DOE 1 uses anonymous information masking its true identity, physical address, and other contact information. Upon further information and belief, Defendant DOE 1 operates in this fashion to protect its true identity.

49.      Plaintiff is presently unaware of the true identity of Defendant

DOE 1.  Once Plaintiff identifies the entity or individual behind Defendant

DOE 1, Plaintiff will amend this Complaint.

## V.    AMAZON.COM, INC.[2]

50.        Amazon.com, Inc. ('Amazon') is the world's largest online

retailer.  The Amazon.com platform offers products worldwide.  Amazon

is available solely online at https://www.amazon.com/ (last visited Feb.

25, 2020).

51.        "Amazon provides a platform for third-party sellers ('Sellers')

and buyers ('Buyers') to negotiate and complete transactions. Amazon is

not involved in the actual transaction between Sellers and Buyers . . . ."[3]

52.        Sellers ship goods to various Amazon warehouses across the

United States.  At those warehouses, Amazon stores a seller's inventory

and ships goods out of those warehouses.  Only about half of the states

have Amazon warehouses.  Florida is one of those states.[4]

_____

[2] Amazon.com Inc. is the corporation that owns and operates
Amazon.com, which is often abbreviated to Amazon.

[3] https://www.sec.gov/Archives/edgar/data/1280998/
000104746904006416/a2128948zex-10_19.htm (last visited Dec. 8, 2019).

[4] https://trustfile.avalara.com/resources/amazon-warehouse-
locations/atl6/  (last visited Dec. 8, 2019).

53.     To make a purchase, typically, a Buyer searches for a particular item on Amazon.com or via a mobile application and submits an order.

54.     Amazon identifies that particular item at one of its many warehouses.  Amazon then fulfills that order by mailing the items to the Buyer.

### A. Selling on Amazon.com Successfully.

55.     Amazon allows Sellers to offer for sale and sell products on the Amazon.com platform.  Amazon requires that Sellers enter into agreements with it concerning the relationship between it and Sellers, duties and responsibilities of the Sellers, and other policies.[5]

56.     Amazon allows Sellers to sell identical items under the same Amazon Standard Identification Number ('ASIN').[6] The only factor that

_____

[5] *See, e.g.*, Amazon.com's Participation Agreement *available at* https://www.amazon.com/gp/help/customer/display.html/ref=hp_rel_topic?ie=UTF8&nodeId=1161272 (last visited Dec. 8, 2019); *see also* Amazon.com's Restricted Products *available at* https://www.amazon.com/gp/help/customer/display.html?nodeId=200277040 (last visited Dec. 8, 2019).

[6] Amazon Standard Identification Numbers (ASINs) are unique

blocks of 10 letters and/or numbers that identify items.  You can find the ASIN on the item's product information page at

separates Sellers of products on the same ASIN is the Seller's goodwill.

Since goodwill is the life blood of any Amazon Seller, the Seller's success

or demise can be made or broken by reviews from Amazon Buyers.

57.     Negative reviews damage a Seller's brand name and kill sales

because purchasing decisions are largely made after reading reviews left

by others.  Such reviews frequently attack both products and their Sellers.

McPherson Decl. ¶ 5, Exhibit 1.

58.     Amazon.com Inc. takes intellectual property infringement

cases seriously.  As such, a complaint results in automatic suspension.

Amazon does not review all its automatic suspensions, nor does it

---

Amazon.com.  For books, the ASIN is the same as the ISBN
number, but for all other products a new ASIN is created
when the item is uploaded to our catalogue.  You will find an
item's ASIN on the product detail page alongside further
details relating to the item, which may include information
such as size, number of pages (if it's a book) or number of
discs (if it's a CD).

ASINs can be used to search for items in our catalogue.  If you
know the ASIN or ISBN of the item you are looking for,
simply type it into the search box (which can be found near
the top of most pages), hit the 'Go' button and, if the item is
listed in our catalogue, it will appear in your search results.

http://www.amazon.com/gp/seller/asin-upc-isbn-info.html  (last visited
Dec. 8, 2019).

intervene in alleged disputes between a Seller and a complainant.

59.     Rather, an accused Seller must resolve any apparent issue with the complainant.  However, complainants often fail to respond to good faith efforts to resolve issues.  Or, complainants often ignore evidence and arguments that prove their complaint lacks merit.  In either situation, an accused Seller is left in limbo.  Hence, accused Sellers are left with two options – 1) remain suspended, or 2) seek judicial intervention.

60.     In some cases, Amazon not only suspends an accused offering, it also suspends an accused Seller's entire account regardless of whether the intellectual property complaint applies to the other offerings.

61.     When compared to a brick and mortar store, such as Wal-Mart, the devastating effects of a wrongful intellectual property complaint can be seen.

62.     If an Amazon complainant submits a single-paged intellectual property infringement report, the result is akin to Wal-Mart removing a certain product from all of its shelves.

63.     Often, Amazon may suspend all of an accused Seller's offerings.  This is akin to Samsung having an intellectual property complaint against one television model, then Wal-Mart removes all of

Samsung's televisions, stereos, speakers, computers, monitors, printers, cameras, washers, dryers, refrigerators, ovens, dishwashers, microwaves, vacuums, cell phones, tablets, virtual reality devices, wearable smart devices, smart home devices, portable music players, and headphones.

64.    For Samsung, the suspension would only apply at Wal-Mart. However, for many Amazon Sellers, the Amazon.com platform is the only avenue they sell through.

### B. Filing an Infringement Complaint with Amazon.

65.    Amazon's automated IP infringement complaint process is both streamlined and straightforward.[7]  To file one, a purported rights owner populates an online form to suspend a Seller's product listing.

66.    The following information is the only information a complainant must submit to suspend a Seller's listing, and possibly, its account:

---

[7] https://www.amazon.com/gp/help/reports/infringement  (last visited Dec. 22, 2019).

**Allegation of Infringement**

Are you the Rights Owner or an Agent?
○ Rights Owner  ● Agent

The primary complaint pertains to

| patent concerns ▾ |
| --- |

The specific concern is

| utility patent ▾ |
| --- |

Name of Brand

| |
| --- |

Patent Number

| |
| --- |

Do you have a court order or ITC (International Trade Commission) order regarding enforcement of this Patent
○ Yes - Court Order  ○ Yes - ITC  ○ No

Additional Information

| |
| --- |

1000

The ASIN (Amazon Standard Identification Number) or the URL of each product you are reporting. You can report up to 50 products for the same specific concern in 1 form. If you have different concerns to report, please submit 1 form for each concern.

ASIN/ISBN-10 **-OR-** Product URL

| | GO |
| --- | --- |

8

67.     At the end of the form, a complainant must declare:

68.     "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law." *Id.*

69.     "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above." *Id.*

70.     To resume selling after a complaint, Amazon.com normally

---

8 https://www.amazon.com/report/infringement (last visited Feb. 25, 2020).

requires the rights owner to affirmatively withdraw it through a retraction request.  McPherson Decl. ¶ 6, Exhibit 1.

71.     Should a rights owner refuse to withdraw a complaint, the Amazon.com Seller's ASIN is suspended so a seller cannot sell goods associated with that ASIN.  Further, multiple complaints may lead to account suspension.  McPherson Decl. ¶ 7, Exhibit 1.

72.     An account suspension is where Amazon locks a Seller's account so that it cannot sell *any* item, even those unrelated to the ASIN complained of.  McPherson Decl. ¶ 8, Exhibit 1.

73.     Notably, Amazon.com, Inc.'s Report Intellectual Property Infringement pages differ between the United States and Canada.  *Compare* https://www.amazon.**com**/report/infringement (last visited Feb. 25, 2020)(emphasis added) *with* https://www.amazon.**ca**/report/infringement (last visited Feb. 25, 2020)(emphasis added).

**C. Amazon Inauthentic Complaints.**

74.     Experts vary in describing Amazon Inauthentic Complaints. However, many agree that such complaints stem from a competitor's malfeasance.

75.     Sellers are often confused by an Amazon Inauthentic policy violation because they are confident that

they are selling genuine goods.  However, Amazon sees them as inauthentic because of WHERE the seller bought their goods.  They are either selling gray market goods retail arbitrage, or liquidation goods.[9]

76.     Inauthentic is a term loosely defined by Amazon that often confuses sellers who receive this type of complaint. According to seller policies, inauthentic items are not quite counterfeit. In the eyes of Amazon, inauthentic items are not completely fake, but they are part of a gray market category that can get quite complicated. This gray market can be hit or miss – regardless, when Amazon chooses to flag your item as potentially inauthentic, it means that the product has allegedly been purchased from a source that is not authorized to sell it.[10]

77.     **[I]nauthentic complaints are also often created as a means to eliminate competition on the Amazon platform, when made by other sellers.** Although these complaints are baseless for the most part, this is not always the case. Therefore, each must be taken seriously and acted on immediately. Reaching out to the complainant personally (or via an attorney) is always the best way to approach an inauthentic product complaint and it is typically what Amazon instructs sellers to do.[11]

78.     Lots of sellers receive policy warnings due to inauthentic complaints. The particular wording of inauthentic item complaints or counterfeit items then triggers manual

---

[9] https://egrowthpartners.com/why-do-so-many-amazon-sellers-get-suspended-for-inauthentic/ (last visited Dec. 26, 2019).

[10] https://www.amazonsellerslawyer.com/inauthentic-item-complaints/ (last visited Dec. 26, 2019).

[11] https://www.payability.com/blog/10-reasons-amazon-sellers-are-suspended/ (last visited Dec. 31, 2019)(emphasis added).

investigations.  Those reliably lead to a suspension of your
Amazon seller account if investigators identify any item
quality patterns or systemic problems. Seller Performance
teams suspend both individual listings and entire accounts on
a daily, if not hourly, basis.  If Amazon investigators see no
annotations on the account that reflect action on your part to
research past inauthentic complaints and improve the quality
of your inventory, then they know you haven't paid attention.
Now the suspension forces you to.[12]

## VI.   THE ROAD TO INNOVATION - CALMEROOS' PUPPY

79.     Defendants' unprofessional business tactics created an
opportunity to improve their companion puppy.  For instance, Plaintiff
Calmeroos began selling on Amazon in 2015, distributed SmartPetLove's
puppy for several years, and contributed to the puppy's online sales
presence.  However, Defendants disregarded Plaintiff's contributions,
severed all distribution relationships, and revoked their sales agreement
with Plaintiff.  Resultingly, Plaintiff sought to improve a 22-year-old
design with customer feedback, new technology, and a fresh passion
infused into the novel redesign.  McPherson Decl. ¶ 9, Exhibit 1.

---

[12] https://www.ecommercechris.com/amazon-seller-invoices/ (last
visited Dec. 26, 2019).

### A. History of Selling on Amazon.

80.     As background, Ms. McPherson, owner of Plaintiff Calmeroos, first learned about selling products on Amazon in October of 2015.  The idea intrigued her because it appeared to offer flexibility and great earning potential.  After leaving her corporate finance career in 2012 to be a stay-at-home mom, she embraced her ever-growing entrepreneurial spirit, and found the flexibility her home enterprise created enticed her even more.  From October 2015 until January 2017, she sold a variety of products on Amazon.com.  McPherson Decl. ¶ 10, Exhibit 1.

### B. Selling Snuggle Puppies from SmartPetLove.

81.     In February of 2017, Ms. McPherson discovered a product called Snuggle Puppy, made by a company called Snuggle Pet Products, LLC DBA SmartPetLove.  Ms. McPherson reached out to the company to begin selling their products as a wholesaler.  Ms. McPherson signed their MAP Agreement on February 2, 2017,[13] and began ordering their products to re-sell on Amazon, with their permission. McPherson Decl. ¶ 11, Exhibit 1.

---

[13] Exhibit 2, (Signed SmartPetLove MAP Agreement).

82.     On January 23rd, 2018, Ms. McPherson received an email from Maggie Fanslow,[14] Plaintiff's contact at SmartPetLove, informing her that SmartPetLove was no longer allowing any third-party sellers to sell its products on Amazon since they were having difficulty controlling their pricing.  McPherson Decl. ¶ 12, Exhibit 1.

83.     Ms. McPherson pleaded her case back to Maggie explaining that she had always respected their MAP pricing and asked if they would allow her to be their exclusive third-party seller on Amazon. On February 5, 2018, Ms. McPherson received an email response from Maggie[15] indicating that SmartPetLove had decided to allow her to be their exclusive third-party seller due to Ms. McPherson's excellent track record with the company. McPherson Decl. ¶ 13, Exhibit 1.

84.     Ms. McPherson continued to sell SmartPetLove products until June of 2018.  On June 8, 2018, Ms. McPherson received an email from Chris Beyersdorff,[16] the company CFO, explaining that they were no

---

[14] Exhibit 3, (emails).

[15] Exhibit 3, (emails).

[16] Exhibit 3, (emails).

longer allowing any third-party sellers to sell on Amazon, and that now included her.  Since her entire Amazon business was selling SmartPetLove products, this decision put Plaintiff in a difficult financial situation. McPherson Decl. ¶ 14, Exhibit 1.

### C. From SmartPetLove Distributor to Pet-Calming Calmeroo Innovator.

85.     Plaintiff contributed to SmartPetLove's sales and profits by distributing its products wholesale for several years.  With SmartPetLove's permission, Plaintiff sold the products exclusively on Amazon.com. Plaintiff's professionalism, work ethic, and adamant adherence to SmartPetLove's policies, such as MAP, ensured that both her company and SmartPetLove remained on good terms.  SmartPetLove never cited any issues with their loyal distributor.   McPherson Decl. ¶ 15, Exhibit 1.

86.     Without warning, in or around June 2018, SmartPetLove canceled its permission and ceased all third-party online sellers' sales, including those of Plaintiff's.  With such unprofessional tactics, Ms. McPherson sought to improve the prior puppy design and developed, tested, and implemented her own product.  As a distributor, she immersed herself in customer service concerning SmartPetLove's product sales.  That is, she reviewed all customer feedback and found many aspects to improve

quality in the product.  Similarly, as a pet owner and lover, she has first-hand knowledge of the relationship between her pets and SmartPetLove's puppy.  McPherson Decl. ¶ 16, Exhibit 1.

87.     Additionally, since SmartPetLove's puppy had largely remained unchanged for the past 22 years, innovations in technology and Ms. McPherson's experience allowed her to improve virtually every aspect of her calming puppy companion.  McPherson Decl. ¶ 17, Exhibit 1. Even SmartPetLove's CEO, Defendant Emery admits that the Snuggle Puppy *was innovative 22 years ago.   See* https://www.smartpetlove.com/2019/11/14/snuggle-puppy-celebrates-22-years/  (last visited Dec. 26, 2019)("For 22 years, the Snuggle Puppy has been a game changer for pets and pet parents,' said Rob Emery, CEO . . . .").

**D. Deciding to Create Calmeroos.**

88.     Ms. McPherson truly loved the impact that pet-calming devices had on pets, as she discovered due to customer reviews, and feedback. She knew there was room for product improvement and sought to create her own version. McPherson Decl. ¶ 18, Exhibit 1.

89.     Ms. McPherson incorporated Wanna Play Products Inc. on

January 1st, 2019[17], which would become the owner of the brand

Calmeroos.  McPherson Decl. ¶ 19, Exhibit 1.  At the time, Ms. McPherson

also applied for trademark protection to her brand, Calmeroos[18].

90.     In October 2018, Ms. McPherson began contacting suppliers in

China to begin the process of producing her own product, Calmeroos.  She

reached out to three separate factories – one each for the plush, heartbeat

and heat packs. She sketched her ideas and sent her drawings to the

factories.[19] McPherson Decl. ¶ 20, Exhibit 1.

91.     From October 2018, until October 2019, Ms. McPherson was

designing and having her products manufactured.  Calmeroos, the

comforting puppy, finally arrived in the USA on November 6th, 2019.  Ms.

McPherson personally flew from Winnipeg to California to inspect her

shipment to ensure a high-quality product.  After meeting her strictest

standards, Ms. McPherson shipped them into Amazon FBA, and they

became available on November 27, 2019.  McPherson Decl. ¶ 21, Exhibit 1.

---

[17] Exhibit 4, (AOI - Wanna Play Products Inc.).

[18] Exhibit 6 (Calmeroos Trademark Appl'n).

[19] Exhibit 5, pp. 6-7 (Calmeroos Improvements).

### E.  Product Improvements.

92.     Ms. McPherson wanted to make Calmeroos the best pet-calming device on the market.  Her thoughtfully-designed improvements applied to virtually every aspect including –

   a.  improving disposable heat packs were very long-lasting at 36 hours each (50% increase over Defendants' product);

   b.  including 2 heat packs (100% increase over Defendants' product);

   c.  substituting a plush that was realistic in both look and positioning; and

   d.  increasing heart's motor's efficiency to last a full 3 weeks on continuous use with 2-AAA batteries (50% increase over Defendants' product).

*See* McPherson Decl. ¶ 22, Exhibit 1; *see also* Exhibit 11, (Products)(depicting Plaintiff's Calmeroos product to Defendants).

93.     If these improvements weren't enough, Ms. McPherson endeavored to give back to pets in need.  For every Calmeroos sold, she donates the financial equivalent of 2 pounds of pet food to rescue shelters.  She has also donated many Calmeroos to rescue shelters and will continue to do so.  McPherson Decl. ¶ 23, Exhibit 1.

94.     To applaud her efforts, the rescues' feedback has been excellent, and they appreciate how Calmeroos help their puppies

overcome loneliness and feel comforted.  McPherson Decl. ¶ 24, Exhibit 1

*see also* Exhibit 3, (emails).

### F.  Press for Calmeroos.

95.     Three different news outlets, including the Winnipeg Free

Press (full page of the Life and Style section as well as online), the

Winnipeg Sun (full page on page three of paper and online), as well as

Better Homes and Gardens online showcased the new Calmeroos.  *See, e.g.,*

- https://www.winnipegfreepress.com/arts-and-life/life/a-pet-for-a-pet-564817142.html

- https://winnipegsun.com/news/local-news/local-entrepreneur-develops-pet-calming-product-for-puppies-kittens

- https://www.bhg.com/news/calmeroos/

McPherson Decl. ¶ 25, Exhibit 1.

### G. Calmeroos' Puppy's Amazon.com and Amazon.ca Listings.

96.     In the United States, Plaintiff sells its Calmeroos Puppy on

Amazon.com as *Calmeroos Puppy Heartbeat Toy Sleep Aid with 2 Long-Lasting*

*Heat Packs Last 36 Hours Each Puppy Anxiety Relief Soother Dogs Cuddle*

*Snuggle Calming Behavioral Aid for Pets* ('Accused Puppy').[20]  Plaintiff's

---

[20] https://www.amazon.com/Calmeroos-Heartbeat-Snuggle-Anxiety-Behavioral/dp/B07NDQLB2Z (last visited Feb. 25, 2020).

Amazon.com ASIN is B07NDQLB2Z.

97.     In Canada, Plaintiff sells its Calmeroos Puppy on Amazon.ca

as *Calmeroos Puppy Heartbeat Toy Sleep Aid with 2 Long-Lasting Heat Packs*

*Last 36 Hours Each Puppy Anxiety Relief Soother Dogs Cuddle Snuggle Calming*

*Behavioral Aid for Pets.*[21]  Plaintiff's Amazon.ca ASIN is B07RT6PPZJ.

**VII.   CALMEROOS KITTY**

98.     Plaintiff also sells its Calmeroos Kitty online.



**A. Calmeroos Kitty's Development and Design.**

99.     The Calmeroos Kitty shares many similarities as its Calmeroos

---

[21] https://www.amazon.ca/Calmeroos-Heartbeat-Snuggle-Anxiety-Behavioral/dp/B07RT6PPZJ (last visited Feb. 25, 2020).

Puppy counterpart.  In fact, besides packaging and the Kitty's plush kitty exterior, both products are the same.



*Calmeroos' Kitty*          *Calmeroos' Puppy*

100.     Importantly, Calmeroos Kitty includes the same heart as its Puppy's counterpart.  And, like the Puppy's heart, the Kitty's heart does not breathe.



*Calmeroos' Kitty Heart*     *SmartPetLove's Heart*   *Calmeroos' Puppy Heart*

**B. Calmeroos' Kitty's Amazon.com and Amazon.ca Listings.**

101.     In the United States, Plaintiff sells its Calmeroos Kitty on Amazon.com as *Calmeroos Kitty Heartbeat Toy Sleep Aid with 2 Long-Lasting Heat Packs Last 36 Hours Each Kitten Puppy Anxiety Relief Soother Cats and Dogs Cuddle Snuggle Calming Behavioral Aid for Pets*.[22]  Plaintiff's Amazon.com ASIN is B07QS82Y4N.

102.     In Canada, Plaintiff sells its Calmeroos Kitty on Amazon.ca as *Calmeroos Kitty Heartbeat Toy Sleep Aid with 2 Long-Lasting Heat Packs Last 36 Hours Each Kitten Puppy Anxiety Relief Soother Cats and Dogs Cuddle Snuggle Calming Behavioral Aid for Pets*.[23]  Plaintiff's Amazon.ca ASIN is B07RWP4LKJ.

**C. Defendants' Threats of Infringement.**

103.     To date, Defendants have filed any Intellectual Property Report or other complaint related to Calmeroos' Kitty.  However, since the Kitty shares many features of the Puppy, should the Puppy infringe SmartPetLove's intellectual property, the Kitty may as well.

---

[22] https://www.amazon.com/Calmeroos-Heartbeat-Snuggle-Anxiety-Behavioral/dp/B07QS82Y4N (last visited Feb. 25, 2020).

[23] https://www.amazon.ca/dp/B07RWP4LKJ/ref=smop_skuctr_view (last visited Feb. 25, 2020).

## VIII.   CALMEROOS' TIMELINE OF DEFENDANTS' PERFIDY

104.     **November 27, 2019** - Plaintiff's Calmeroos first began selling on Amazon.  McPherson Decl. ¶ 26, Exhibit 1.

105.     **November 27, 2019 – Present** - Ms. McPherson immediately enjoyed her product launches' success and sales continued to grow day after day.  McPherson Decl. ¶ 27, Exhibit 1.

### A. Accusations of Patent Infringement.

106.     **November 29th, 2019** - Upon information and belief, Defendant Emery, the owner of Snuggle Pet Products, LLC, ordered Plaintiff's Calmeroos Puppy product to be shipped to his home address in Florida.[24]

107.     **December 3, 2019** - Amazon sent Plaintiff two emails one hour a part indicating that SmartPetLove filed Amazon Complaints against its competitor, Calmeroos.[25]

### B. Defendants' False Product Review.

108.     **December 11th, 2019** – Upon information and belief, Defendant Emery or Defendant DOE 1 left a one-star product review on

---

[24] Exhibit 7, (Reviews).

[25] Exhibit 3, (emails).

Calmeroos Product listing that said "Another knock-off of the original Snuggle Puppy. Go with the original you will not be let down."[26]

### C.  Defendants' False Seller Review.

109.     **December 14, 2019** - Upon information and belief, Defendant Emery or Defendant DOE 1 left a one-star Seller Feedback review which read exactly the same way "Another knock-off of the original Snuggle Puppy. Go with the original you will not be let down."[27]

### D.  Defendants Accuse Plaintiff's Calmeroos Puppy of Being an Inauthentic Plaintiff's Calmeroos Puppy.

110.     **December 20, 2019 –** Plaintiff's most successful listing, the Calmeroos Puppy listing, was shut down due to Defendants' multi-prong attack.[28]

## IX.   DEFENDANTS' FAKE PATENTS ASSERTED AGAINST PLAINTIFF

111.     SmartPetLove's Amazon Complaints are patently false because its asserted patents are not registered, valid, and enforceable US patents.

---

[26] Exhibit 7, (Reviews).

[27] Exhibit 7, (Reviews).

[28] Exhibit 3, pp. 21-22 (emails).

112.     Those Complaints allege that Plaintiff Calmeroos sold its

*Calmeroos Puppy Heartbeat Toy Sleep Aid with 2 Long-Lasting Heat Packs Last*

*36 Hours Each Puppy Anxiety Relief Soother Dogs Cuddle Snuggle Calming*

*Behavioral Aid for Pets*[29] ('Accused Puppy'), and such sales infringe

SmartPetLove's registered patents.  Those patent numbers vary from its

first Complaint ('Patent number: Certificate No. 544552') to its second

Complaint ('Patent number: 5445522')(collectively, 'Falsely Asserted

Patents').

**A. Defendant SmartPetLove Falsely Claims Patent Infringement.**

113.     On December 3, 2019, Calmeroos received a performance

notification from Amazon.com's Seller Performance Team.  Upon

information and belief, one of the Defendants filed an Amazon Complaint

concerning –

> Info SPL
> info@smartpetlove.com
> Patent number: Certificate No. 544552
>
> ASIN: B07NDQLB2Z
> Title: Calmeroos Puppy Heartbeat Toy for Smart Pets Who Love to
> Snuggle and 2 Heat Packs Puppy Anxiety Relief

---

[29] https://www.amazon.com/gp/product/B07NDQLB2Z?pf_rd_p=
ab873d20-a0ca-439b-ac45-cd78f07a84d8&pf_rd_r=
J511E1GCG7QVMTM5HKXN (last visited Dec. 13, 2019).

Calming Behavioral Aid for Pets
Complaint ID: 6639404641[30]

114.     Within an hour, and upon information and belief, Defendant

Bakke also filed a Complaint concerning -

Jason Bakke
info@smartpetlove.com
Patent number: 5445522

ASIN: B07NDQLB2Z
Title: Calmeroos Puppy Heartbeat Toy for Smart Pets Who Love to
Snuggle and 2 Heat Packs Puppy Anxiety Relief
Calming Behavioral Aid for Pets
Complaint ID: 6639550561[31]

**B.  Defendants' First Falsely Asserted Patent <u>Expired Over 100
Years Ago.</u>**

115.     One of the Defendants' first Falsely Asserted Patent ('Patent

number: Certificate No. 544552') *was indeed* registered . . . in 1895, **over a**

---

[30] Exhibit 8, p. 14 (Letter to Defendants) - Amazon Policy Violation
Performance Notification, (Amazon Notice)(Complaint ID:  6639404641)).

[31] Exhibit 8, p. 15 (Letter to Defendants) - Amazon Policy Violation
Performance Notification, (Amazon Notice 2)(Complaint ID:  6639550561).

**full century ago**[32] and unsurprisingly was not owned by any Defendant.[33]

### C. Defendant Bakke's Second Falsely Asserted Patent <u>Relates to Combustion Engine, Not Puppies.</u>

116.     Inspecting Defendant Bakke's second Falsely Asserted

Patent[34], a cursory review of 'Patent number: 5445522' within the USPTO's

Patent Full-Text and Image Database (PatFT) returned an expired patent,

titled 'Combustion device,' which registered in 1995.[35]  Again, none of the

Defendants owned this patent either.

117.     In sum, and upon information and belief, Defendant Bakke

asserted a patent that was registered in 1895 and one directed to a

'*Combustion device*' against Calmeroos' *puppy sleep aid*.  Neither patent is

---

[32] http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO1&Sect2=HITOFF&d=PALL&p=1&u=%2Fnetahtml%2FPTO%2Fsrchnum.htm&r=1&f=G&l=50&s1=0544552.PN.&OS=PN/0544552&RS=PN/0544552 (last visited Dec. 13, 2019).

[33] Exhibit 8, p. 14 (Letter to Defendants) - Amazon Policy Violation Performance Notification, (Amazon Notice)(Complaint ID:  6639404641)).

[34] Exhibit 8, p. 15 (Letter to Defendants) - Amazon Policy Violation Performance Notification, (Amazon Notice 2)(Complaint ID:  6639550561).

[35] http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO1&Sect2=HITOFF&d=PALL&p=1&u=%2Fnetahtml%2FPTO%2Fsrchnum.htm&r=1&f=G&l=50&s1=5445522.PN.&OS=PN/5445522&RS=PN/5445522 (last visited Dec. 13, 2019).

enforceable.  Neither patent is owned by any Defendant.

## X.   DEFENDANTS' FALSE DECLARATIONS

### A. Defendants' False Declarations to Amazon.com, Inc.

118.    Defendants' patent infringement claims are baseless and

violate their declarations made to Amazon.com, Inc. when Defendants

filed their reports –

> I have a good faith belief that the content(s) described
> above violate(s) my rights described above or those held by
> the rights owner, and that the use of such content(s) is
> contrary to law.

> I declare, under penalty of perjury, that the information
> contained in this notification is correct and accurate and that I
> am the owner or agent of the owner of the rights described
> above.[36]

119.    Nevertheless, as a result of Defendants' fraudulent Amazon

Complaints, Amazon suspended Plaintiff's puppy offerings so that they

were/are no longer available to Amazon.com customers.

120.    Defendants' fraudulent and bad-faith complaints, and their

resulting suspension, have materially affected potential purchasers

because they no longer had the option to purchase authentic Calmeroos

---

[36] *See* Amazon's Report Infringement Form *available at* https://www.amazon.com/report/infringement (last visited Feb. 25, 2020).

Puppies.

121.    Additionally, as a result of Defendants' fraudulent and bad-faith complaints, Calmeroos has suffered extensive loss of sales, loss of goodwill, and exposure to frozen assets.

### B. False Declaration Concerning Snuggle Puppy's Registration Status.

122.    In an email dated February 3, 2019, counsel for Defendants stated that, "My client's Snuggle Puppy® is the original pet anxiety reducing product with a heartbeat which has been on the market for over 30 years."

123.    Contrary to counsel's assertion, SmartPetLove does not hold a federal registration for the word mark "Snuggle Puppy."  Rather, SmartPetLove has a pending federal application for "Snuggle Puppy" which has been published for opposition. *See* U.S. Trademark App'n Serial No. 88620933.

124.    SmartPetLove is the assignee of record for U.S. Trademark Reg. No. 4,465,254 for "Snuggle Puppie," which upon information and belief, has not been used in commerce by SmartPetLove for a period of greater than two years.

## XI.   NEGATIVE PRODUCT REVIEW AND INAUTHENTIC COMPLAINT BY AN ANONYMOUS INDIVIDUAL OR ENTITY

125.    Although Plaintiff suspected Defendant DOE 1 is Defendant Emery or Defendant Bakke, Calmeroos has made several non-judicial attempts to ascertain the real individuals behind Defendant DOE 1.  None of its efforts have been successful.  For this reason, Plaintiff must, again, turn to judicial options.

126.    Upon information and belief, Defendant DOE 1 does not use its real name with Amazon.

127.    Upon information and belief, Defendant DOE 1 is working in concert to eliminate competition to SmartPetLove.  Defendant Doe 1 has voluntarily and intentionally devised and participated in a scheme to defraud Calmeroos out of money.

128.    Upon information and belief, Defendant DOE 1 intended to defraud Plaintiff out of money through its pattern of purchasing, returning, and leaving negative reviews.  Upon further information and belief, Defendant DOE 1 has defrauded Calmeroos out of money by submitting bogus inauthenticity claims with Amazon.

129.    Defendant DOE 1's actions prevented Calmeroos from selling its inventory to actual customers, from purchasing additional inventory,

and from having an untarnished Amazon seller rating.

130.     Upon information and belief, Defendant DOE 1 has used e-mail addresses, the Internet, interstate mail, and other communications to further its conspiracy.

131.     Upon information and belief, Defendant DOE 1 has a business relationship with Amazon.com, Inc.

## XII.    SUSPECTED DEFENDANT EMERY'S BOGUS REVIEWS AND ONLINE STALKING

132.     Defendants have sold the same product for decades.  ''For 22 years, the Snuggle Puppy has been a game changer for pets and pet parents,' said Rob Emery, CEO."[37]

133.     Upon information and belief, SmartPetLove's CEO, Defendant Emery, just started following Calmeroos on Instagram to further torment Plaintiff.  McPherson Decl. ¶ 28, Exhibit 1.

### A. Calmeroos' Perfect Feedback Except Defendants' One-star Review.

134.     Many happy clients have shared highlights of Ms. McPherson's contributions to Calmeroos' benefits over Snuggle Puppy's

---

[37] https://www.smartpetlove.com/2019/11/14/snuggle-puppy-celebrates-22-years/ (last visited Dec. 31, 2019).

22-year-old design.  As one instance, one commented about Calmeroos'

high product quality.[38]

135.     As another, Calmeroos' life-like attributes have emotionally

assisted those in need.[39]  In fact, a foster pet parent who received a donated

Calmeroos, submitted a stellar review, and in the comments, another foster

donation recipient praised Calmeroos' efficacy.  As a result, several

potential customers then sought more purchasing information.

136.     As yet another, a client raved that her Calmeroos has greatly

assisted for her foster puppy in adjusting to a new environment.[40]

137.     Finally, another customer shared a photo of their dog

snuggled up to Calmeroos. Undoubtedly, Plaintiff's product works and

when people hear about it, they want one too.

**B. Defendant DOE 1's Damaging Effect.**

138.     In particular, Defendant DOE 1 has defamed Plaintiff by

---

[38] Exhibit 7, (Reviews)(Dec 19, 2019 - Rescue Feedback on high quality, donation highlights feedback about the high product quality.).

[39] Exhibit 7, (Reviews)(Dec 17, 2019 - Rescue review plus comments with customer interest and more reviews.).

[40] Exhibit 7, (Reviews)(Dec 12, 2019 - Customer Review for Foster Puppy).

falsely and publicly stating that Plaintiff's Accused Puppy is of poor quality.  Defendant DOE 1's assertions, considered in context, necessarily imply a false message and are literally false in that they state or imply that Plaintiff's Accused Puppy are of poor quality.  As such, Defendant DOE 1's statements deceived, or had the capacity to deceive Amazon.com and purchasers on the Amazon.com platform.

139.    In light of consumer expectations for reviews and Amazon policies governing reviews, Defendant DOE 1 in leaving reviews for Calmeroos as a seller and for Calmeroos' puppy product made a number of additional false statements by implication: that DOE 1 was a neutral party; that DOE 1 was giving an unbiased review; that DOE 1 was not the employee, agent, friend, or family member of a competitor of Calmeroos; and that DOE 1 cared principally about the quality of Calmeroos' product and would have rated it highly if the quality were good.

140.    Defendant DOE 1 intended to make these false statements and intended for consumers and for Amazon itself to act in reliance upon them.

141.    Defendant DOE 1's false and defamatory statements are designed to interfere with and injure Plaintiff in connection with its

business and to promote Defendant DOE 1's own business agenda.  This wrongful and tortious conduct perpetrated by Defendant DOE 1 has disparaged Plaintiff and is causing and will continue to cause Plaintiff irreparable harm and damages.

142.    Defendant DOE 1's false and defamatory statements have also caused tortious interference with Plaintiff's contractual obligations with Amazon.com Inc. and its customers.

143.    The false and/or misleading statements of Defendant DOE 1 misrepresent the characteristics of Plaintiff' s Accused Puppy suggesting that they are of poor quality.

144.    Due to Defendant DOE 1's fraudulent actions, Plaintiff is entitled to injunctive relief prohibiting Defendant DOE 1 from tortiously interfering with Plaintiff's contractual and business relations, as well as an award of monetary damages, punitive damages, attorney's fees, and costs to be proven at trial.

145.    In addition to Defendants' lack of patent knowledge, they also fail to understand significance of using a legal term such as 'knock off' when Defendants made the following Amazon customer review on December 11, 2019 ('Dec. 11 Review') against Calmeroos –

> Real Puppy Lover
>
> ★☆☆☆☆ **Should have went with the best**
> Reviewed in the United States on December 11, 2019
> **Verified Purchase**
>
> Another knock-off of the original Snuggle Puppy. Go with the original you will not be let down
>
> 3 people found this helpful
>
> | Helpful |   Comment  |  Report abuse

Accused Puppy.[41]

146.    As an aside, "3 people found this helpful," which translates in

to lost sales.

147.    However, knock-offs usually relate to trademark infringement

as opposed to patent

infringement Complaints.

And, 'knock-offs' carry special

meaning, especially when

used in the legal sense.  For

instance, the Second Circuit in



*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, found that knock-offs are a

---

[41] https://www.amazon.com/gp/product/B07NDQLB2Z?pf_rd_p=
ab873d20-a0ca-439b-ac45-cd78f07a84d8&pf_rd_r=
J511E1GCG7QVMTM5HKXN (last visited Dec. 13, 2019).

'cheap [] copy of the original manufacturer's more expensive product, thus allowing a buyer to acquire the prestige of owning what appears to be the more expensive product.'  219 F.3d 104, 108 (2d Cir. 2000).

148.     Here, nothing suggests that the Accused Puppy is a knock-off. For example, the Accused Puppy's cost is similar to the *original Snuggle Puppy* (see right).[42]

149.     Moreover, once one actually inspects the meticulous packaging, build quality, and overall experience of the two dogs, any objective consumer would not deem Plaintiff's Accused Puppy inferior or a knock-off of Defendants *original Snuggle Puppy*.  In fact, the Calmeroo is actually more luxurious than Defendants'.

   

150.     Indeed, the presentations vastly different, and the actual

---

[42] https://www.amazon.com/s?k=snuggle+puppy&ref=nb_sb_noss_1 (last visited Dec. 13, 2019).

quality of the products differ.  Not only does the *original Snuggle Puppy*

lack accessories, even the one included, the Heat Pack seems expired, stale,

or otherwise unusable.



151.     Defendants' 'review' was nothing short of another tactic to

disrupt Plaintiff Calmeroos' business.

152.     Upon information and belief, Defendants have a business

relationship with Amazon.com, Inc.

**XIII.    DEFENDANT DOE 1'S INAUTHENTIC CLAIM**

153.     Upon information and belief, Defendant DOE 1 has a business

relationship with Amazon.com, Inc.  Using 'knock-off' is a trigger word to

alert Amazon and have it intervene.  McPherson Decl. ¶ 29, Exhibit 1.

154.    On December 20, 2019, in addition to the publicly viewable one-star seller feedback rating, and the threat of deactivation due to the Order Defect Rate, caused entirely by the one negative review, Calmeroo's most successful listing, the Calmeroos Puppy listing, was shut down due to claims of inauthenticity.[43]

155.    Through research, Ms. McPherson has reason to believe that Amazon's algorithm identifies listings and shuts them down if any product reviews or seller feedback reviews mention the words 'knock-off.' Ms. McPherson has been forced to submit an appeal to the Amazon Seller Performance Team requiring her to explain her Plan of Action, and to reveal all of her suppliers' information in order to even be considered for reinstatement.  Ms. McPherson lost sales every hour following the claim. McPherson Decl. ¶ 30, Exhibit 1.

156.    Regardless of settlement, Defendants' damage that has been done to Plaintiff Calmeroos' Amazon seller account will be irreversible.

---

[43] Exhibit 3, (emails).

## XIV.    THIS FIRM'S GOOD FAITH EFFORTS TO RESOLVE

157.    After Defendants' wrongdoings, Calmeroos began losing significant revenue.  When coupled with Defendants' complete lack of professionalism, Ms. Crystal McPherson hoped for an amicable resolution. McPherson Decl. ¶ 31, Exhibit 1.

158.    Calmeroos incrementally sought resolution.  Calmeroos even hired a patent litigation firm to communicate past efforts, willingness to settle, and the dire state of Calmeroos' business.  McPherson Decl. ¶ 32, Exhibit 1.

159.    This firm began such efforts by writing to Defendants in December 2019.  *See* McPherson Decl. ¶ 33, Exhibit 1; *see also* letter from Mr. Jeff Breloski, attorney to Calmeroos, to Defendants (Dec. 16, 2019), Exhibit 8, (Letter to Defendants).

160.    In total, after lost business, resources used to hire consultants and attorneys, and precious time wasted, Defendants still have not admitted their Falsely Asserted Patents, explained their infringement contentions, or provided Calmeroos with any reasonable settlement demands.  McPherson Decl. ¶ 34, Exhibit 1.

## XV. EXTRAORDINARY CIRCUMSTANCES

161.     Defendants' bogus complaints, refusal to timely withdraw in the face of fraud, and holiday sales timing have accomplished their **intended** effects – unfairly destroy their competition.

### A. Defendants and Counsel Ignore Longstanding Law.

162.     SmartPetLove does not own the Falsely Asserted Patents.

163.     SmartPetLove's bad-faith assertion that Plaintiff's Calmeroos Puppy 'will infringe [SmartPetLove's] design and utility patents' is an anti-competitive scare-tactic intended to stop Plaintiff from fairly competing with SmartPetLove.

164.     SmartPetLove and its attorney knew or should have known that their accusations were false and groundless.

165.     Defendants' statement transmitted to Amazon, combined with the Defendant DOE 1's false reviews, has led consumers to believe that they can be sued for purchasing products from Plaintiff and that Plaintiff's products are counterfeit and unlawful.

166.     Upon information and belief, Defendants published their false and defamatory statements for a commercial purpose:  to help Defendants monopolize the market for a certain category of puppies on Amazon and

to prevent Plaintiff from fairly competing.

167.    The false or misleading statements of the Defendants were also made in the context of 'commercial advertising or promotion,' as used in Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  These statements have resulted substantial and irreparable damage to Plaintiff's business, reputation, and goodwill.

## B. Calmeroos Suffers Immeasurable Lost Sales.

168.    Notably, and upon information and belief, Defendants' calculated wrongs commenced with the 2019 holiday shopping season. During the Georgia Lawsuit, Plaintiff's Calmeroos Puppy, ASIN B07NDQLB2Z, was removed from the Amazon US market.

169.    Upon receiving notice, Calmeroos immediately began its resolution attempts to salvage sales during the holiday shopping season. With the busy holiday shopping season beginning, Calmeroos respectfully requested a response in time to sell during this record-setting holiday rush. *See* Black Friday, Thanksgiving Day Both Set Records in U.S. Ecommerce Sales by Mike O'Brien (Nov. 30, 2019)[44]

---

[44] https://multichannelmerchant.com/ecommerce/black-friday-thanksgiving-day-set-records-u-s-ecommerce-sales/ (last visited Dec. 22,

> Thanksgiving Day ecommerce sales were also a record $4.2
> billion, an increase of 14.5%, marking the first time it
> surpassed the $4 billion mark. Large ecommerce companies of
> $1 billion and over saw a 244% gain in Thanksgiving Day
> ecommerce sales, while smaller retailers – those with $50
> million or less in annual sales – saw a 61% increase.

*Id.*

170.    Calmeroos' suspensions spanned over the busy holiday

shopping season due to Defendants' lack of good faith.

### C. Defendants' Exploits Result in a Temporary Restraining Order and Preliminary Injunction.

171.    To date, Defendants refuse to withdraw any complaints.  Such

a stubborn stance is particularly egregious as all negative actions are bogus

and unsupported.

172.    Upon information and belief, Defendants have attempted to

eliminate their competition by utilizing the online Amazon infringement

report and force them to stop competing without any non-judicial

recourse.

173.    Each day that passed resulted in increased damages.

McPherson Decl. ¶ 35, Exhibit 1.

_____

2019).

174.     Defendants have failed to respond in any meaningful manner. Exhibit 10, (2019.12.20 - CALMEROOS LETTER).

175.     By failing to cooperate and resolve the complaints, and despite repeated requests, Defendants have effectively and unfairly received a preliminary injunction leaving Calmeroos without recourse. That is, Calmeroos was temporarily restricted from selling its Accused Puppy on Amazon.  Further, Defendants are unfairly preventing Calmeroos from curing any potential infringement.

176.     To put the severity of their action into perspective, a comparison of this complaint to a district court action is necessary.  Before a court, a preliminary injunction is a drastic and extraordinary remedy that is infrequently granted in patent infringement actions.  *See U.S. Pharm. Corp. v. Trigen Labs., Inc.*, No. 1:10–cv–0544–WSD, 2011 U.S. Dist. LEXIS 13637, at *18 (N.D. Ga. Jan. 27, 2011).  A party seeking temporary or preliminary injunctive relief must establish that:  (1) there is a substantial likelihood that the movant will prevail on the merits; (2) the movant will suffer irreparable injury if the relief is not granted; (3) the threatened injury outweighs the harm the relief would inflict on the opposing party; and (4) if granted, the injunction would not be adverse to the public interest.  *See*

*Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 977 (Fed. Cir. 1996)(emphasis added); *Skillern v. Ga. Dep't of Corr.*, Civ. Act. No. 1:05-cv-2629, 2006 U.S. Dist. LEXIS 81878, at *15 (N.D. Ga. Nov. 7, 2006).

177.     Moreover, a permanent injunction is only permissible after a final judgment, which occurs at the end of a litigation case.  Once a guarantee after winning a patent case, the Supreme Court recently ruled that permanent injunctions are no longer automatic.  Rather, a successful plaintiff must prove that (1) it will suffer an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) the balance of hardships between the parties favors the plaintiff; and (4) the public interest would not be disserved.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 391 (2006).

178.     Both types of injunctive relief usually require overcoming high burdens of proof, providing adequate evidentiary support, and offering supporting expert testimony.

179.     Contrastingly, here, Defendants have presumably filled out a single infringement form . . . **with false information**. https://www.amazon.com/gp/help/reports/ infringement (last visited Dec. 22, 2019).  With no further evidence and no opportunity to respond,

they have effectively received injunctive relief without proving the need for such relief.

### D. Defendants' Ongoing Crimes Endanger Plaintiff's Livelihood.

180.     Defendants have not retracted their negative Seller Feedback review, which has had grave consequences on Calmeroos' seller account. First, its Order Defect Rate was severely affected, with a threat from Amazon that its account could be deactivated[45] because the only negative feedback Plaintiff received (which was from Defendants) made the average Order Defects very high for the first few weeks, since it is calculated based on the negative feedback received compared to total overall orders received.  McPherson Decl. ¶ 36, Exhibit 1.

181.     Amazon's target for their Order Defect Rate is under 1%, but Plaintiff's quickly became 11.1% since the date range used to calculate the Order Defect Rate was from October 2, 2019 to November 30th, 2019. McPherson Decl. ¶ 37, Exhibit 1.

182.     Plaintiff Calmeroos is currently below the target of under 1%, but the threat of deactivation is still looming on Calmeroos' account.

---

[45] Exhibit 9 – (2019.12.20 - Order Defect Rate - Threat of Deactivation).

McPherson Decl. ¶ 38, Exhibit 1.

## E. Defendants' Inaction.

### 1. *Defendant Jason Bakke*

183.     Upon information and belief, Defendant Jason Bakke filed his Amazon Complaint alleging infringement of Patent Number 544552 on or before December 3, 2019.  *See* Exhibit 3, p. 9 (Emails)(Complaint ID: 6639404641).  Concurrently, and upon further information and belief, he filed another Amazon Complaint alleging infringement of Patent Number 5445522.  *See* Exhibit 3, p. 9 (Emails)(Complaint ID: 6639550561).

184.     On December 16, 2019, Calmeroos' counsel drafted a letter and served both Defendants Bakke and Emery.  *See* Exhibit 15 (Georgia Lawsuit - Doc. 1-8)(Letter).  Therein, counsel explained that Patent Number 544552 registered in the 1800s and was not owned by any Defendant.  Similarly, counsel explained that Patent Number 554422 registered in 1995, pertained to a "combustion device" and was not owned by any Defendant.  *Id.*

185.     At of the time of this filing, Defendant Jason Bakke has not retracted his complaints.  As a result, Calmeroos' Amazon account is "at risk of deactivation."  Exhibit 16 (Georgia Lawsuit - Doc. 1-9)(Notice).

2. *Defendant Rob Emery*

186.    Upon information and belief, Defendant Rob Emery has filed an inauthentic claim against Calmeroos.

187.    In the alternative, upon information and belief, Defendant DOE 1 has filed an inauthentic claim against Calmeroos.

188.    The Defendant who filed the inauthentic claim against Calmeroos knew, or should have known, that Calmeroos-branded products sold by Calmeroos itself are by definition fully authorized Calmeroos products sourced according to Calmeroos' own determination of optimal supply chain, and hence cannot be inauthentic.

189.    Calmeroos products sold by Calmeroos are not represented to be the products of any other brand or company.

190.    Even a casual inspection of Plaintiff Calmeroos' product and packaging reveal its high quality relative to SmartPetLove's toy puppy and does not reasonably support a conclusion of inauthenticity.

191.    Upon information and belief, Defendant Emery has also not yet withdrawn his one-star seller feedback. The identical one-star product review was removed by Amazon after it was revealed that a competitor likely left the  fraudulent review. When Ms. McPherson explained the

same thing with regards to the one-star seller feedback, Calmeroos' listing was removed shortly thereafter due to a product inauthenticity claim. McPherson Decl. ¶ 39, Exhibit 1.

## XVI.   DEFENDANTS' ALLEGATIONS AFTER FILING THE GEORGIA LAWSUIT

192.     Upon information and belief, Defendants actually intended to cause harm by their false statements. This seems especially true when Defendants were given actual notice of the falsity of the claims but opted not to correct their published statement to Amazon.

### A. Invalidity of the '292 Patent.

193.     As a first basis for invalidity, during prosecution of the '292 Patent, applicant relied on the allegedly novel incorporation of a pressure-sensitive switch into his claimed structure to overcome anticipation by prior art Hoard et al. (US Patent Application Publication 2009/0156089).

194.     Prior art Hoard et al. (US Patent Application Publication 2009/0156089) disclosed a broad range of switches including "touch sensitive" switches contained within a toy animal for activating comforting animal sounds including simulated breathing.

195.     Touch sensitive switches may be actuated by pressure.

196.     As a second basis for invalidity, during prosecution of the '292

Patent, applicant relied on the fact that applicant's claimed pressure-sensitive switch would encourage close contact between a toy pet and a real pet due to the switch being pet-operable by body weight.

197.    In contrast to applicant's reliance on his claimed pressure-sensitive switch being pet-operable, the claims of the '292 Patent do not expressly contain such a limitation.

### B.  Non-infringement of the '292 Patent.

198.    No Calmeroos product (Puppy or Kitty) incorporates a harness with a looped webbing encircling the neck, shoulders, and back of an animal.

199.    No Calmeroos product contains a sound generator generating rhythmic soothing acoustic sounds that simulate actual animal breathing.

200.    No Calmeroos product contains a pressure sensitive switch.

201.    No Calmeroos product infringes the '292 Patent.

202.    Calmeroos' heart is activated by a sliding on/off toggle switch located on the heart's back (shown below, left).  The '292 Patent requires activation by a pressure-sensitive switch, which is featured on SmartPetLove's heart (show below, right).  SmartPetLove's heart's switch must be held down for a few seconds to turn it on, and it is located on the

front of their heart.





*Calmeroos' Heart Back*
*(sliding switch)*

*SmartPetLove's Heart Front*
*(pressure-sensitive switch)*



*Calmeroos' Heart Back (enlarged - depicting a sliding switch)*

---

[46] https://www.amazon.com/SmartPetLove-Snuggle-Puppy-Behavioral-Biscuit/dp/B0722XGRMB/ref=sr_1_1?keywords=smartpetlove&qid=1582668559&sr=8-1 (last visited Feb. 25, 2020).

[47] https://www.amazon.ca/Calmeroos-Heart-Replacement-Beating-Puppy/dp/B07RT2Q1JP (last visited Feb. 25, 2020).

### C.  Unprotectable Trade Dress.

185.    The heart shape of the removable insert within SmartPetLove's plush toys is functional and cannot be protected as trade dress.  That is, it wordlessly communicates a first purpose of the insert, which is to supply a simulated heart-beat.

187.    Additionally, it wordlessly communicates a second purpose of the insert, which is to supply simulated companionship, comfort, and love.

188.    Even leaving aside the functionality of SmartPetLove's heart-shape for its simulated beating heart, Calmeroos' own heart-beat simulating insert is emblazoned prominently with Plaintiff's registered Calmeroos trademark, thus negating any possibility of consumer confusion.

### D. Non-Infringement of Unprotectable Trade Dress.

203.    SmartPetLove's and Calmeroos' heart colors are different. Ms. McPherson intentionally chose a lighter, brighter red because she thought it looked more appealing then Snuggle Puppy's darker red heart. McPherson Decl. ¶ 40, Exhibit 1.

### E.  False Statements Regarding Foreign Registered Patents.

204.    As noted previously, Defendant Bakke baselessly initiated

Amazon patent complaints against Calmeroos with patents that he variously designated as "544522" and as "5445522".

205.    Upon information and belief, Defendant Bakke acted in concert and in furtherance of a conspiracy with the other Defendants to file the baseless patent complaints.

206.    In communications from Defendants' attorneys to Calmeroos' attorneys following the initiation of legal proceedings, Defendants' attorneys sought to excuse the baseless patent complaints as mistaken assertions of foreign patents.

207.    Defendants knew or reasonably should have known that foreign patents cannot be enforced within the United States.

208.    Calmeroos have been unable in preliminary searches to identify any foreign patents "544522" or "5445522" purported owned by Defendants.

209.    Upon information and belief, Defendants do not own any foreign patents "544522" or "5445522", and Defendants' story that they innocently and mistakenly asserted foreign patents against Calmeroos is subterfuge layered upon subterfuge.

## XVII.   CLAIMS

### A. COUNT I:  US Patent Registration No. 544,552
### Declaratory Judgment of Non-Infringement.

210.     Calmeroos re-alleges Sections I-VII, VIII.A., IX, X.A., XIV, and XV of this Complaint as if set forth in full herein.

211.     An actual and justiciable controversy exists between Calmeroos and Defendants as to the infringement of their unidentified patents.

212.     Calmeroos' manufacture, sale, and offers to sell its Accused Puppy in the United States have not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of their unidentified patents.

213.     Defendants have no ownership rights to wield the Falsely Asserted Patents against Calmeroos.

214.     The allegations of patent infringement by Defendants have placed a cloud over Calmeroos' business and are likely to cause Calmeroos to lose revenues and business opportunities.  Defendants' actions and assertions, therefore, will likely cause irreparable injury to Calmeroos.

215.     Calmeroos is entitled to a judgment declaring that Defendants' unidentified patent is not infringed by Calmeroos' Accused

Puppy.

### B. COUNT II:  US Patent Registration No. 5,445,522 Declaratory Judgment of Non-Infringement.

216.     Calmeroos re-alleges Sections I-VII, VIII.A., IX, X.A., XIV, and XV of this Complaint as if set forth in full herein.

217.     An actual and justiciable controversy exists between Calmeroos and Defendants as to the infringement of their unidentified patents.

218.     Calmeroos' manufacture, sale, and offers to sell its Accused Puppy in the United States have not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of their unidentified patents.

219.     Defendants have no ownership rights to wield the Falsely Asserted Patents against Calmeroos.

220.     The allegations of patent infringement by Defendants have placed a cloud over Calmeroos' business and are likely to cause Calmeroos to lose revenues and business opportunities.  Defendants' actions and assertions, therefore, will likely cause irreparable injury to Calmeroos.

221.     Calmeroos is entitled to a judgment declaring that Defendants' unidentified patent is not infringed by Calmeroos' Accused

Puppy.

### C.  COUNT III:  US Patent Registration No. 10,314,292
Declaratory Judgment of Invalidity.

222.     Calmeroos re-alleges Sections I-VII, XIV, XV, and XVI.A.-B. of

this Complaint as if set forth in full herein.

223.     An actual and justiciable controversy exists between

Calmeroos and Defendants as to the validity of the '292 Patent.

224.     The claims of those patents are invalid for failure to meet one

or more of the requirements of patentability set forth in 35 U.S.C. §§ 101 *et*

*seq.*, including, but not limited to, §§ 101, 102, 103 and 112.

225.     Additionally, the Accused Puppy is a straightforward puppy

with a heat pack and heart device.  Therefore, if the Accused Puppy

infringes the '292 Patent, the unidentified patent lacks novelty under 35

U.S.C. § 102 and is rendered obvious by multiple prior art references

pursuant to  35 U.S.C. § 103.

226.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201,

Calmeroos is entitled to and hereby move the Court for a judgment

declaring that such claims are invalid for failure to comply with one or

more requirements for patentability under the patent laws of the United

States, including, but not limited to, 35 U.S.C. § 101, 102, 103, 112, 113, 115

and/or 116.  Further, such claims are invalid for want of novelty and obviousness.

### D. COUNT IV:  US Patent Registration No. 10,314,292 Declaratory Judgment of Non-Infringement (Calmeroos Puppy).

227.　　Calmeroos re-alleges Sections I-VII, XIV, XV, and XVI.A.-B. of this Complaint as if set forth in full herein.

228.　　An actual and justiciable controversy exists between Calmeroos and Defendants as to the infringement of the '292 Patent.

229.　　Calmeroos' manufacture, sale, and offers to sell its Accused Puppy in the United States have not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '292 Patent.

230.　　The allegations of patent infringement by Defendants have placed a cloud over Calmeroos' business and are likely to cause Calmeroos to lose revenues and business opportunities.  Defendants' actions and assertions, therefore, will likely cause irreparable injury to Calmeroos.

231.　　Calmeroos is entitled to a judgment declaring that the '292 Patent is not infringed by Calmeroos' Accused Puppy.

### E.  COUNT V:  US Patent Registration No. 10,314,292
### Declaratory Judgment of Non-Infringement (Calmeroos Kitty).

232.     Calmeroos re-alleges Sections I-VII, XIV, XV, and XVI.A.-B. of this Complaint as if set forth in full herein.

233.     An actual and justiciable controversy exists between Calmeroos and Defendants as to the infringement of the '292 Patent.

234.     Calmeroos' manufacture, sale, and offers to sell its Kitty in the United States have not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '292 Patent.

235.     The allegations of patent infringement by Defendants have placed a cloud over Calmeroos' business and are likely to cause Calmeroos to lose revenues and business opportunities.  Defendants' actions and assertions, therefore, will likely cause irreparable injury to Calmeroos.

236.     Calmeroos is entitled to a judgment declaring that the '292 Patent is not infringed by Calmeroos' Kitty.

### F.  COUNT VI:  Heart Trade Dress
### Declaratory Judgment of Invalidity.

237.     Calmeroos re-alleges Sections I-VII, XIV, XV, AND XVI.C.-D. of this Complaint as if set forth in full herein.

238.     An actual and justiciable controversy exists between

Calmeroos and SmartPetLove as to the infringement of its heart trade

dress.

239.    SmartPetLove's purported heart trade dress is functional and

incapable of protection.

240.    SmartPetLove's purported heart trade dress lacks

distinctiveness and incapable of protection.

241.    Calmeroos is entitled to a judgment declaring that

SmartPetLove's purported heart trade dress is invalid.

### G. COUNT VII:  Heart Trade Dress
### Declaratory Judgment of Non-Infringement.

242.    Calmeroos re-alleges Sections I-VII, XIV, XV, AND XVI.C.-D.

of this Complaint as if set forth in full herein.

243.    An actual and justiciable controversy exists between

Calmeroos and SmartPetLove as to the infringement of its heart trade

dress.

244.    Calmeroos' manufacture, sale, and offers to sell its Accused

Puppy or Kitty in the United States have not infringed SmartPetLove's

purported heart trade dress.

245.    The allegations of trade dress infringement by Defendants

have placed a cloud over Calmeroos' business and are likely to cause

Calmeroos to lose revenues and business opportunities.  Defendants'

actions and assertions, therefore, will likely cause irreparable injury to

Calmeroos.

246.    Calmeroos is entitled to a judgment declaring that

SmartPetLove's purported heart trade dress is not infringed by Calmeroos'

Accused Puppy or Kitty.

### H. COUNT VIII:  Snuggle Puppy
### Declaratory Judgment of Invalidity.

247.    Calmeroos re-alleges Sections I-VII, VII.B.-C., XIV, X.B., XII,

XV, and XVI.D. of this Complaint as if set forth in full herein.

248.    An actual and justiciable controversy exists between

Calmeroos and SmartPetLove as to the infringement of its Snuggle Puppy

trademark.

249.    SmartPetLove's purported Snuggle Puppy trademark lacks

distinctiveness and incapable of protection.

250.    Calmeroos is entitled to a judgment declaring that

SmartPetLove's Snuggle Puppy trademark is invalid.

### I. COUNT IX:  Snuggle Puppy
### Declaratory Judgment of Non-Infringement.

251.    Calmeroos re-alleges Sections I-VII, VII.B.-C., XIV, X.B., XII,

71

XV, and XVI.D. of this Complaint as if set forth in full herein.

252.    An actual and justiciable controversy exists between

Calmeroos and SmartPetLove as to the infringement of its Snuggle Puppy

trademark.

253.    Calmeroos' manufacture, sale, and offers to sell its Accused

Puppy or Kitty in the United States have not infringed SmartPetLove's

Snuggle Puppy trademark.

254.    The allegations of trademark infringement by Defendants

have placed a cloud over Calmeroos' business and are likely to cause

Calmeroos to lose revenues and business opportunities.  Defendants'

actions and assertions, therefore, will likely cause irreparable injury to

Calmeroos.

255.    Calmeroos is entitled to a judgment declaring that

SmartPetLove's Snuggle Puppy trademark is not infringed by Calmeroos'

Accused Puppy or Kitty.

**J.  COUNT X: Unfair Competition.**

256.    Calmeroos re-alleges Sections I-VII, XIV, and XV of this

Complaint as if set forth in full herein.

257.    Defendants filed complaints with Amazon.com, Inc. against

Calmeroos alleging patent infringement of unenforceable patents.

258.    Defendants failed to provide any information concerning the complaints and ignored all resolution efforts.

259.    By filing incomplete, bogus complaints, Defendants have unfairly disadvantaged Calmeroos.

### K. COUNT XI:  Tortious Interference with Business Relationship.

260.    Calmeroos re-alleges Sections I-VII, XIV, and XV of this Complaint as if set forth in full herein.

261.    Calmeroos has a valid contract with Amazon.com, Inc.

262.    Defendants sell on Amazon.com and knew or should have known of Calmeroos' contract with Amazon.com, Inc.

263.    Defendants filed their First Patent Infringement Complaint by asserting an expired patent registration that none of them owned.

264.    Defendants filed their Second Patent Infringement Complaint by asserting a patent related to combustion engines that none of them owned.

265.    Defendants have acted with a direct or 'specific' intent to injure Plaintiff.

266.    Defendants have filed inauthentic claims that are untrue.

267.     Defendants' improper conduct in submitting false infringement reports and false and disparaging reviews with whom Plaintiff has ongoing contracts and business relations.

268.     Defendants intentionally interfered with Calmeroos' business expectancy with Amazon.com, Inc. and its customers.  In an effort to interfere with the Calmeroos' economic relations, Defendants contacted Amazon.com to allege that Calmeroos were infringing an unidentified patent.

269.     Upon information and belief, Defendants knew and intended that by making such an allegation, Amazon.com would immediately remove the Calmeroos' listings from its website and prohibit it from selling the Accused Puppy until the allegation of infringement was resolved.

270.     Defendants intentional interferences with Calmeroos' contract was unjustified. Defendants used improper means, acted in bad faith in intentionally interfering with Calmeroos' contract with Amazon.com, Inc. Defendants' allegations of patent infringement by Calmeroos to Amazon.com were knowingly false, was an improper means, and was done with the intent to interfere with the Calmeroos' current and

prospective economic relations, especially during a high-volume selling season.

271.    Defendants have acted in objective and subjective bad faith by having wrongful complaints filed and refusing to resolve or withdraw them.

272.    Despite its knowledge, Defendants' failure to act in good faith have caused damages to Calmeroos' business relationships with Amazon.com and their customers.  As a direct and proximate result, Calmeroos has been damaged by Defendants' tortious interferences with Calmeroos' contract with Amazon.com, Inc. in an amount to be proven at trial.

### L.  COUNT XII:  Restitution.

273.    Calmeroos re-alleges Sections I-VII, XI, XIV, XV, XVI.E. of this Complaint as if set forth in full herein.

274.    Defendants' wrongful acts have eliminated Plaintiff's Calmeroos Puppy from the Amazon.com marketplace.

275.    Defendants have monetarily benefited from its unlawful acts by an increase in puppy sales and by the elimination of a competitor.

276.    But for Defendants' wrongful acts, Plaintiff would not have

lost sales, goodwill, and the ability to sell its puppies and Defendants

would have not have wrongly reduced competition and increased sales.

277.    The Restatement (Third) of Restitution and Unjust Enrichment

advocates that the remedy of disgorgement as a restitution theory should

permit a claimant to recover ''more than a provable loss so that the

defendant may be stripped of a wrongful gain.''[48]

278.    Plaintiff has no adequate remedy at law.

### M. COUNT XIII:  Defamation *Per Se* as to Defendant Robert Emery or Defendant DOE 1.

279.    Calmeroos re-alleges Sections I-VII, XII.B, XIV, and XV of this

Complaint as if set forth in full herein.

280.    Defendants' intellectual property infringement report to

Amazon (a third party) falsely stated, directly or by clear implication that

Plaintiff infringed on Defendants' non-existent patent rights.

281.    Defendants have also filed an inauthentic claim.

282.    Defendants' communication was not privileged.

283.    Defendants' falsehoods were made with actual malice by

_____

[48] ''Restitution requires full disgorgement of profit by a conscious wrongdoer ... because any lesser liability would provide an inadequate incentive to lawful behavior.''  *Id.*

Defendants inasmuch as it knew of the falsity or recklessly disregarded their truth or falsity.

284.    Defendants was at least negligent in making the defamatory and injurious statements that Plaintiff's Calmeroos Puppy infringe Defendants' intellectual property.

285.    Defendants' statements have caused special harm to Plaintiff or are actionable irrespective of special harm as they were made with the intent to cause Plaintiff's customers and Amazon.com to cease doing business with Plaintiff and/or purchasing Plaintiff's Products.

286.    By its defamatory and injurious statements and wrongful assertion of rights against Plaintiff's Products, Defendants have disparaged and impugned Plaintiff

287.    Defendants' defamatory and injurious statements were calculated to create an unfavorable impression of and to defame Plaintiff in order to interfere with and destroy Plaintiff's business and did interfere with and destroy Plaintiff's business.

288.    By the aforesaid conduct, Defendants made false and defamatory charges against Plaintiff in reference to its trade, office, and profession that falsely imputed to Plaintiff that Plaintiff's Calmeroos

Puppy infringe unenforceable patent registrations that none of the

Defendants have a right to assert.  These false charges were calculated by

Defendants to injure Plaintiff in its trade, office, and profession and

constitute defamation *per se.*

289.    Defamation per se presumes malice in their utterance making

it unnecessary to prove express malice.

290.    Defendants' willful, deliberate, and defamatory acts were

committed with prior knowledge or reckless disregard of the falsity of the

statements.

291.    Unless preliminarily and permanently enjoined, Defendants'

conduct will cause Plaintiff irreparable harm for which there exists no

adequate remedy at law.

292.    As a direct and proximate result of the aforesaid unlawful

conduct of Calmeroos, Plaintiff has suffered substantial damages to its

professional reputation, the threat of lost business and lost profits, for

which Plaintiff is entitled to recover from Defendants in an amount to be

proved at trial, plus punitive damages, and litigation expenses, including

attorney's fees.

293.    Further, as Defendants intended to harm Plaintiff, and

actually did harm, Defendants are liable for punitive damages.

### N. COUNT XIV:  Florida Deceptive and Unfair Trade Practices Act.

294.      Calmeroos re-alleges Sections I-VII, XII, XIV, and XV of this Complaint as if set forth in full herein.

295.      Defendants have disparaged the goods, services, or business of another by false or misleading representation of fact.

296.      Defendants, directing and/or working in concert with Defendant DOE 1 - 'Real Puppy Lover,' have falsely represented in writing to third parties that Plaintiff's Calmeroos Puppy are infringing, unlawful, and 'knock-offs.'

297.      Defendants have also deceptively held itself out to Georgia consumers and competitors as owning exclusive rights to the Falsely Asserted Patents.

298.      Plaintiff has suffered damages as a result of Defendants' actions and will continue to suffer damage unless the Court enjoins Defendants from engaging in these deceptive trade practices.

### O. COUNT XV:  Sherman Anti-Trust Act.

299.      Calmeroos re-alleges Sections I-VII, VIII.A., IX, X.A., XIV, and XV of this Complaint as if set forth in full herein.

300.    Upon information and belief, at least one Defendant conspired with another Defendant or with a non-party to perform an act or acts.

301.    The contemplated act or acts would have had or did have the effect of restraining trade or commerce in violation of 15 USCS § 1.

302.    The conspiracy intended that Calmeroos' sales on Amazon would be decreased.

303.    In furtherance of the conspiracy, Defendant Justin Bakke asserted patent "544,552" against Calmeroos through Amazon's internal complaint system.

304.    None of Defendants had any right to enforce patent "544,552" against Calmeroos.

305.    In furtherance of the conspiracy, Defendant Justin Bakke asserted patent "5,445,522" against Calmeroos through Amazon's internal complaint system.

306.    None of Defendants had any right to enforce patent "5,445,522" against Calmeroos.

307.    In furtherance of the conspiracy, Defendants have asserted or threatened to assert U.S. Pat. Reg. No. 10,314,292 against Calmeroos.

308.    Every claim of U.S. Pat. Reg. No. 10,314,292 requires "a sound

generator generating rhythmic soothing acoustic sounds that simulate actual animal breathing."

309.   Calmeroos' puppy toy sold on Amazon does not include "a sound generator generating rhythmic soothing acoustic sounds that simulate actual animal breathing."

310.   Calmeroos' kitty toy sold on Amazon does not include "a sound generator generating rhythmic soothing acoustic sounds that simulate actual animal breathing."

311.   No product of Calmeroos sold on Amazon includes "a sound generator generating rhythmic soothing acoustic sounds that simulate actual animal breathing."

312.   No product of Calmeroos contains "a sound generator generating rhythmic soothing acoustic sounds that simulate actual animal breathing."

313.   Any assertion of U.S. Pat. Reg. No. 10,314,292 against Calmeroos is objectively baseless.

### P.  COUNT XVI:  Patent Misuse.

314.   Calmeroos re-alleges Sections I-VII, VIII.A., IX, X.A., XIV, and XV of this Complaint as if set forth in full herein.

315.     Upon information and belief, Defendant Bakke has made an objectively baseless and bad faith assertion of patent rights with the intent to restrain trade.

316.     Defendant Bakke's assertion of patent "544522" with Amazon was an assertion of a patent while lacking a current right to enforce the patent against Calmeroos.

317.     Defendant Bakke's assertion of patent "544522" with Amazon was an assertion of an expired patent.

318.     In the alternative, Defendant Bakke's assertion of patent "544522" with Amazon was an assertion of a foreign patent within the United States and was without any designation indicating its origin.

319.     Defendant Bakke's assertion of patent "544522" materially misled Calmeroos, subjected Calmeroos to unwarranted sanction at the hands of Amazon, and forced Calmeroos to expend time, effort, and money to react to the unjustified accusation.

320.     Defendant Bakke's assertion of patent "5445522" with Amazon was an assertion of a patent while lacking a current right to enforce the patent against Calmeroos.

321.     Defendant Bakke's assertion of patent "5445522" with

Amazon was an assertion of an expired patent.

322.     In the alternative, Defendant Bakke's assertion of patent "5445522" with Amazon was an assertion of a foreign patent within the United States and was without any designation indicating its origin.

323.     Defendant Bakke's assertion of patent "5445522" materially misled Calmeroos, subjected Calmeroos to unwarranted sanction at the hands of Amazon, and forced Calmeroos to expend time, effort, and money to react to the unjustified accusation.  Upon information and belief, Defendant Bakke's patent assertions were carried out on behalf of Defendant SmartPetLove.

324.     Upon information and belief, Defendant Emery had prior knowledge of Defendant Bakke's intent to lodge Amazon patent complaints against Calmeroos.

## DEMAND FOR JURY TRIAL

Calmeroos demands a trial by jury under Federal Rule of Civil Procedure 39 for all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Calmeroos prays that this Court

- enter judgment in favor of Calmeroos and against Defendants for all

counts;

- enter a declaratory judgment that Defendants' '292 Patent, heart trade dress, and Snuggle Puppy trademark are invalid and unenforceable;

- enter a declaratory judgment that Calmeroos has not infringed in any way any patent, trade dress, trademark, or copyright owned by any Defendant;

- find and enter and order that Defendants' conduct amounts to an exceptional case and award Calmeroos its costs and attorneys' fees;

- enjoin Defendants, their agents, servants, employees and attorneys, and all those in active participation or privity with any of them, from charging Calmeroos or its agents, distributors, or customers with infringement of an unidentified patent, and from otherwise using the unidentified patent to interfere in any way with Calmeroos' manufacture, use, offer for sale, or sale of the Accused Puppy;

- award Calmeroos damages for injuries they incurred from Defendants' unfair competition;

- award Calmeroos actual, consequential, and punitive damages

caused by Defendants' intentional and tortious interference with the Calmeroos' contract and/or business expectancy with Amazon.com, Inc.;

- award costs and expenses to Calmeroos;

- award Calmeroos pre- and post-judgment interest and costs on all damages; and

- award Calmeroos such other and further relief as the Court deems just and proper, premises considered.

-----------------*Signature Page Follows*-----------------

## <u>JURY TRIAL DEMANDED</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

By: _____

Jeffrey T. Breloski, Trial Counsel
Florida Bar Identification No. 18077
USPTO Reg. No. 60,952
E-mail: jbreloski@ATLawip.com

ATLawip LLC
1265 Stuart Ridge
Johns Creek, Georgia 30022
678.667.3491

James Claus
Florida Bar Identification No. 49847
USPTO Reg. No.62,173
Email: james.claus@onebox.com

James Claus, Attorney
4516 NW 37th Terrace
Gainesville, FL 32605
352.575.8338

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 1.05(a), the undersigned counsel certify that the

foregoing has been prepared in 1 ¼" margins and in Book Antiqua 13

point, one of the fonts and points approved by the Court.

By: _____
Jeffrey T. Breloski, Trial Counsel
Florida Bar Identification No. 18077
USPTO Reg. No. 60,952
E-mail: jbreloski@ATLawip.com