UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| WANNA PLAY PRODUCTS INC.<br>  DBA AMAZON STOREFRONT<br>  CALMEROOS<br><br>       Plaintiff,<br><br>v.<br><br>ROBERT EMERY, JASON BAKKE,<br>SNUGGLE PET PRODUCTS, LLC DBA<br>SmartPetLove, and DOE 1<br><br>       Defendants. | Civil Action No. 1:20-cv-<br><br>JURY TRIAL DEMANDED |

## DECLARATION OF MS. CRYSTAL MCPHERSON

I, CRYSTAL MCPHERSON, declare as follows:

1. My name is Crystal McPherson. I make this Declaration on my own personal knowledge unless indicated otherwise.

2. With my husband, I own and operate Wanna Play Products Inc. DBA Amazon Storefront Calmeroos, plaintiff in this action.

3. As evidenced from Amazon.ca's website (vice Amazon.com), and the fact that all prices are in Canadian dollars, Defendants' allegation that

it was unaware the Amazon.com marketplace was not global seems disingenuous.

    a. Products to be sold on Amazon.com in the US are shipped to Amazon FBA Warehouses throughout the US.

    b. Products to be sold on Amazon.ca in Canada are shipped to Amazon warehouses throughout Canada.

    c. Sales through Amazon.com in the US and Amazon.ca in Canada are completely separate.

        i. Proceeds from Canadian sales are paid to a seller's Canadian-based CND account in Canadian dollars.

        ii. Proceeds from US sales are paid to a seller's US-based USD account in US dollars.

    d. Taxes related to Amazon sales are entirely different in Canada versus the US.

        i. In Canada, sellers collect and remit Goods and Services and Provincial taxes.

        ii. In the US, sellers must collect and remit state sales tax according to where products are warehoused and sold.

        iii. To sell in either market, a seller must be aware of these

     significant tax differences.

  e. Product listings, even if for the exact same product, are completely distinct in the .ca marketplace versus .com marketplace. For instance, product listings have different ASINS and are treated as completely independent listings from each market.

4. Plaintiff Wanna Play Products Inc. is a Canadian corporation located at 12 McKall Bay, Winnipeg, Manitoba R3X 1T8. Plaintiff does business as Amazon Seller Calmeroos. Ms. Crystal McPherson owns and operates Wanna Play Products Inc. with her husband.

5. Negative reviews damage a Seller's brand name and kill sales because purchasing decisions are largely made after reading reviews left by others. Such reviews frequently attack both products and their Sellers.

6. To resume selling after a complaint, Amazon.com normally requires the rights owner to affirmatively withdraw it through a retraction request.

7. Should a rights owner refuse to withdraw a complaint, the Amazon.com Seller's ASIN is suspended so a seller cannot sell goods associated with that ASIN. Further, multiple complaints may lead to account suspension.

8. An account suspension is where Amazon locks a Seller's account so that it cannot sell *any* item, even those unrelated to the ASIN complained of.

9. Defendants' unprofessional business tactics created an opportunity to improve their companion puppy. For instance, Plaintiff Calmeroos began selling on Amazon in 2015, distributed SmartPetLove's puppy for several years, and contributed to the puppy's online sales presence. However, Defendants disregarded Plaintiff's contributions, severed all distribution relationships, and revoked their sales agreement with Plaintiff. Resultingly, Plaintiff sought to improve a 22-year-old design with customer feedback, new technology, and a fresh passion infused into the novel redesign.

10. As background, Ms. McPherson, owner of Plaintiff Calmeroos, first learned about selling products on Amazon in October of 2015. The idea intrigued her because it appeared to offer flexibility and great earning potential. After leaving her corporate finance career in 2012 to be a stay-at-home mom, she embraced her ever-growing entrepreneurial spirit, and found the flexibility her home enterprise created enticed her

even more. From October 2015 until January 2017, she sold a variety of products on Amazon.com.

11. In February of 2017, Ms. McPherson discovered a product called Snuggle Puppy, made by a company called Snuggle Pet Products, LLC DBA SmartPetLove. Ms. McPherson reached out to the company to begin selling their products as a wholesaler. Ms. McPherson signed their MAP Agreement on February 2, 2017,[1] and began ordering their products to re-sell on Amazon, with their permission.

12. On January 23rd, 2018, Ms. McPherson received an email from Maggie Fanslow,[2] Plaintiff's contact at SmartPetLove, informing her that SmartPetLove was no longer allowing any third-party sellers to sell its products on Amazon since they were having difficulty controlling their pricing.

13. Ms. McPherson pleaded her case back to Maggie explaining that she had always respected their MAP pricing and asked if they would allow her to be their exclusive third-party seller on Amazon. On February

---

[1] Exhibit 2, (Signed SmartPetLove MAP Agreement).

[2] Exhibit 3, (emails).

5, 2018, Ms. McPherson received an email response from Maggie[3] indicating that SmartPetLove had decided to allow her to be their exclusive third-party seller due to Ms. McPherson's excellent track record with the company.

14. Ms. McPherson continued to sell SmartPetLove products until June of 2018. On June 8, 2018, Ms. McPherson received an email from Chris Beyersdorff,[4] the company CFO, explaining that they were no longer allowing any third-party sellers to sell on Amazon, and that now included her. Since her entire Amazon business was selling SmartPetLove products, this decision put Plaintiff in a difficult financial situation.

15. Plaintiff contributed to SmartPetLove's sales and profits by distributing its products wholesale for several years. With SmartPetLove's permission, Plaintiff sold the products exclusively on Amazon.com. Plaintiff's professionalism, work ethic, and adamant adherence to SmartPetLove's policies, such as MAP, ensured that both her company and

---

[3] Exhibit 3, (emails).

[4] Exhibit 3, (emails).

SmartPetLove remained on good terms. SmartPetLove never cited any issues with their loyal distributor.

16. Without warning, in or around June 2018, SmartPetLove canceled its permission and ceased all third-party online sellers' sales, including those of Plaintiff's. With such unprofessional tactics, Ms. McPherson sought to improve the prior puppy design and developed, tested, and implemented her own product. As a distributor, she immersed herself in customer service concerning SmartPetLove's product sales. That is, she reviewed all customer feedback and found many aspects to improve quality in the product. Similarly, as a pet owner and lover, she has first-hand knowledge of the relationship between her pets and SmartPetLove's puppy.

17. Additionally, since SmartPetLove's puppy had largely remained unchanged for the past 22 years, innovations in technology and Ms. McPherson's experience allowed her to improve virtually every aspect of her calming puppy companion.

18. Ms. McPherson truly loved the impact that pet-calming devices had on pets, as she discovered due to customer reviews, and

feedback. She knew there was room for product improvement and sought to create her own version.

19. Ms. McPherson incorporated Wanna Play Products Inc. on January 1st, 2019[5], which would become the owner of the brand Calmeroos.

20. In October 2018, Ms. McPherson began contacting suppliers in China to begin the process of producing her own product, Calmeroos. She reached out to three separate factories – one for the plush, heartbeat and heat packs. She sketched her ideas and sent her drawings to the factories.[6]

21. From October 2018, until October 2019, Ms. McPherson was designing and having her products manufactured. Calmeroos, the comforting puppy, finally arrived in the USA on November 6th, 2019. Ms. McPherson personally flew from Winnipeg to California to inspect her shipment to ensure a high-quality product. After meeting her strictest standards, Ms. McPherson shipped them into Amazon FBA, and they became available on November 27, 2019.

---

[5] Exhibit 4, (AOI - Wanna Play Products Inc.).

[6] Exhibit 5, pp. 6-7 (Calmeroos Improvements).

22. Ms. McPherson wanted to make Calmeroos the best pet-calming device on the market. Her thoughtfully-designed improvements applied to virtually every aspect including –

    a. improving disposable heat packs were very long-lasting at 36 hours each (50% increase over Defendants' product);

    b. including 2 heat packs (100% increase over Defendants' product);

    c. substituting a plush that was realistic in both look and positioning; and

    d. increasing heart's motor's efficiency to last a full 3 weeks on continuous use with 2-AAA batteries (50% increase over Defendants' product).

23. If these improvements weren't enough, Ms. McPherson endeavored to give back to pets in need. For every Calmeroos sold, she donates the financial equivalent of 2 pounds of pet food to rescue shelters. She has also donated many Calmeroos to rescue shelters and will continue to do so.

24. To applaud her efforts, the rescues' feedback has been excellent, and they appreciate how Calmeroos help their puppies overcome loneliness and feel comforted.

25. Three different news outlets, including the Winnipeg Free Press (full page of the Life and Style section as well as online), the

Winnipeg Sun (full page on page three of paper and online), as well as Better Homes and Gardens online showcased the new Calmeroos.  *See, e.g.,*

- https://www.winnipegfreepress.com/arts-and-life/life/a-pet-for-a-pet-564817142.html
- https://winnipegsun.com/news/local-news/local-entrepreneur-develops-pet-calming-product-for-puppies-kittens
- https://www.bhg.com/news/calmeroos/

26. **November 27, 2019** - Plaintiff's Calmeroos first began selling on Amazon.

27. **November 27, 2019 – Present** - Ms. McPherson immediately enjoyed her product launches' success and sales continued to grow day after day.

28. Upon information and belief, SmartPetLove's CEO, Defendant Emery, just started following Calmeroos on Instagram to further torment Plaintiff.

29. Upon information and belief, Defendant DOE 1 has a business relationship with Amazon.com, Inc.  Using 'knock-off' is a trigger word to alert Amazon and have it intervene.

30. Through research, Ms. McPherson has reason to believe that Amazon's algorithm identifies listings and shuts them down if any

product reviews or seller feedback reviews mention the words 'knock-off.' Ms. McPherson has been forced to submit an appeal to the Amazon Seller Performance Team requiring her to explain her Plan of Action, and to reveal all of her suppliers' information in order to even be considered for reinstatement.  Ms. McPherson lost sales every hour following the claim.

31. After Defendants' wrongdoings, Calmeroos began losing significant revenue.  When coupled with Defendants' complete lack of professionalism, Ms. Crystal McPherson hoped for an amicable resolution.

32. Calmeroos incrementally sought resolution.  Calmeroos even hired a patent litigation firm to communicate past efforts, willingness to settle, and the dire state of Calmeroos' business.

33. This firm began such efforts by writing to Defendants in December 2019.

34. In total, after lost business, resources used to hire consultants and attorneys, and precious time wasted, Defendants still have not admitted their Falsely Asserted Patents, explained their infringement contentions, or provided Calmeroos with any reasonable settlement demands.

35. Each day that passed resulted in increased damages.

36. Defendants have not retracted their negative Seller Feedback review, which has had grave consequences on Calmeroos' seller account. First, its Order Defect Rate was severely affected, with a threat from Amazon that its account could be deactivated[7] because the only negative feedback Plaintiff received (which was from Defendants) made the average Order Defects very high for the first few weeks, since it is calculated based on the negative feedback received compared to total overall orders received.

37. Amazon's target for their Order Defect Rate is under 1%, but Plaintiff's quickly became 11.1% since the date range used to calculate the Order Defect Rate was from October 2, 2019 to November 30th, 2019.

38. Plaintiff Calmeroos is currently below the target of under 1%, but the threat of deactivation is still looming on Calmeroos' account.

39. Upon information and belief, Defendant Emery has also not yet withdrawn his one-star seller feedback. The identical one-star product review was removed by Amazon after it was revealed that a competitor likely left the fraudulent review. When Ms. McPherson explained the

---

[7] Exhibit 9 – (2019.12.20 - Order Defect Rate - Threat of Deactivation).

12

same thing with regards to the one-star seller feedback, Calmeroos' listing was removed shortly thereafter due to a product inauthenticity claim.

40.     SmartPetLove's and Calmeroos' heart colors are different. Ms. McPherson intentionally chose a lighter, brighter red because she thought it looked more appealing then Snuggle Puppy's darker red heart.

I declare under penalties of perjury of the laws of the United States of America that the above and foregoing is true and correct.

Executed on February 26, 2020.

                                                 //Crystal McPherson //
                                                 Crystal McPherson